IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| DMILL POLLEY | : | NO. 18-196 |

### ORDER-MEMORANDUM

**AND NOW**, this 29th day of June, 2020, upon consideration of Defendant Dmill Polley's "Application for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as a Result of COVID-19" (Docket No. 32), all documents filed in connection therewith, and the Oral Argument held on June 15, 2020 by videoconference, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

Defendant Dmill Polley moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that we should reduce his sentence to time served and release him from the Federal Correctional Institution at Elkton ("FCI Elkton") because of the COVID-19 pandemic and his medical condition. We sentenced Polley on January 9, 2019 to 36 months' imprisonment and 3 years of supervised release following a guilty plea to a one-count indictment that charged him with Hobbs Act robbery in violation of 18 U.S.C. § 1951. This sentence was imposed consecutive to a 51-month sentence that Polley received in the United States District Court for the Eastern District of Michigan for a separate Hobbs Act robbery offense (Crim. A. No. 15-20106), resulting in a combined total term of imprisonment of 87 months. His projected release date is October 14, 2022.

As a general rule, a district court may not modify a defendant's sentence after it has been imposed. 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 825 (2010).

However, the First Step Act provides for a compassionate release exception to that general rule, stating that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> \*   \*   \*
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (stating that the court may reduce a term of imprisonment if it finds, after consideration of the factors in § 3553(a), that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community," and "[t]he reduction is consistent with this policy statement"). Although neither U.S.S.G. § 1B1.13 nor Congress defines the term "extraordinary and compelling," the Sentencing Commission's commentary to § 1B1.13 provides guidance. See U.S.S.G. § 1B1.13 cmt. n.1. The commentary provides, among other things, that "extraordinary and compelling reasons" can include (1) certain specified serious medical conditions (a terminal illness or a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care"), (2) the defendant's advancing age (over 65 with various qualifications), (3)

---

[1] On April 22, 2020, Polley submitted an administrative request to the Warden at FCI Elkton for compassionate release. His request was denied on April 30, 2020. The Government accordingly does not dispute that Polley fully exhausted his administrative remedies prior to filing this Motion.

2

the defendant's family circumstances, and (4) "[o]ther [r]easons . . . [a]s determined by the Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in combination with the three prior reasons.  U.S.S.G. § 1B1.13 cmt. n.1.

Relying on the fourth category of "extraordinary and compelling" reasons set forth in the Sentencing Commission's commentary, Polley maintains that the COVID-19 virus is spreading at FCI Elkton and argues that as a 26-year-old male with an unspecified thyroid condition, he may be especially vulnerable to serious complications and death from COVID-19.  These reasons, he contends, present an extraordinary and compelling basis for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

As a preliminary matter, we acknowledge Polley's concern that the Bureau of Prisons (the "BOP") has failed to contain the spread of the COVID-19 virus at FCI Elkton.  According to the BOP's website, FCI Elkton reported on June 28, 2020 that 236 inmates and 7 staff were then positive for COVID-19, 9 inmates had died of the virus, and 625 inmates and staff had recovered from the virus.  See Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (accessed June 29, 2020).  The spread of COVID-19 at the prison, however, cannot alone provide the "extraordinary and compelling" reasons that would justify Polley's release.  See United States v. Roeder, 807 F. App'x 157, 160-61 (3d Cir. 2020) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid . . . that sentence."); United States v. Rodriguez, Crim. A. No. 03-271, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (stating that the fact that "prison is a particularly dangerous place for [the defendant]" in light of COVID-19, is not alone an extraordinary and compelling reason for compassionate release).  Thus, we must determine whether Polley's individual circumstances, in light of the

COVID-19 threat at FCI Elkton, are so extraordinary and compelling that we should reduce his sentence and release him from prison more than two years before his projected release date.

In support of his request for a sentence reduction, Polley has submitted his BOP medical records, which show that he is a 26-year-old male who, while serving his prison sentence, was diagnosed with an unspecified thyroid disorder.  (See Def.'s Mot., Ex. at 7 of 12.)  Significantly, Polley concedes that "at this time there is not enough information to suggest that most people with thyroid disease will be more susceptible to contracting COVID-19."  (Def.'s Mot. at 9 (citing American Association of Clinical Endocrinologists, *AACE Position Statement: Coronavirus (COVID-19) and People with Thyroid Disease*, https://www.aace.com/recent-news-and-updates/aace-position-statement-coronavirus-covid-19-and-people-thyroid-disease (Apr. 15, 2020)[2] (additional citation omitted)).)  Indeed, the Center for Disease Control and Prevention ("CDC") website does not include thyroid disorders as a high-risk factor for severe illness from COVID-19.  See Center for Disease Control and Prevention, Coronavirus Disease 2019, *People who are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated June 25, 2020).

Polley nonetheless contends that his thyroid condition places him at higher risk for an adverse outcome from COVID-19 because he has not yet received any medical treatment for his condition.  He maintains that this lack of treatment means that his thyroid condition is uncontrolled and that "uncontrolled [thyroid disease] may increase the risk for viral infections and complications from [COVID-19]."  (Def.'s Mot. at 9 (citations omitted).)  In support of his assertion that he is at higher risk because of this thyroid condition, he relies in part on a position

---

[2] The policy statement at this web address states that "there is currently no reason to believe that most people with thyroid disease are at increased risk to contract this novel coronavirus or to experience complications."

statement from the American Association of Clinical Endocrinologists, which states that "if thyroid medications are not taken as prescribed, uncontrolled thyroid disease may increase a person's risk for [COVID-19] infection and complications." American Association of Clinical Endocrinologists, *AACE Position Statement: Coronavirus (COVID-19) and People with Thyroid Disease*, https://www.aace.com/recent-news-and-updates/aace-position-statement-coronavirus-covid-19-and-people-thyroid-disease (Apr. 15, 2020).

However, even accepting as true that an uncontrolled thyroid disorder, as opposed to a controlled thyroid disorder, can leave an individual especially vulnerable to the adverse effects of COVID-19, Polley has not submitted evidence from which we can infer that his condition is indeed uncontrolled. The evidence shows that, in July 2019, Polley requested to have his thyroid checked by health services. (Def.'s Mot., Ex. at 9 of 12.) Prison health services also noted at that time that Polley "denie[d] any hyperthyroid symptoms," his vital signs were normal, and that he was "exercis[ing] every day." (Id.) The Government adds that the medical records show that on August 15, 2019, Polley received a sonogram of his thyroid gland, which "revealed that his thyroid gland was within normal size and no mass or cyst was detected," and that to date, following his most recent evaluation on May 8, 2020, there are no signs that he suffers from any adverse effects from his thyroid condition. (Gov't Resp. at 5.) Based on this evidence, there are no indications that Polley's symptoms from his thyroid disorder are worsening or that he even needs medical treatment for his condition. We thus decline to characterize Polley's thyroid condition as uncontrolled and therefore cannot conclude that Polley's thyroid condition places him at higher risk for serious illness or death from COVID-19.

As a result, we reject Polley's argument that his medical condition, together with the spread of COVID-19 at FCI Elkton, provide extraordinary and compelling reasons under 18 U.S.C. §

3582(c)(1)(A)(i), to warrant a sentence reduction and Polley's release from imprisonment at this time. We therefore deny Polley's Motion without prejudice to his filing a renewed motion for compassionate release, after again exhausting his administrative remedies, should his medical condition materially change.

                                      BY THE COURT:

                                      /s/ John R. Padova
                                      John R. Padova, J.